```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
    FAUSAT AMOKE OGUNBAYO,

                              Plaintiff,              MEMORANDUM & ORDER

              -against-                               12-CV-428 (NGG) (CLP)

    CITY OF NEW YORK,

                              Defendant.
----------------------------------------------------------------X
    FAUSAT AMOKE OGUNBAYO,

                              Plaintiff,              MEMORANDUM & ORDER

              -against-                               12-CV-6188 (NGG) (CLP)

    CITY OF NEW YORK and STATE OF NEW YORK,

                              Defendants.
----------------------------------------------------------------X
```
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are pro se Plaintiff's objections to Magistrate Judge Cheryl L. Pollack's Report and Recommendation ("R&R") that recommended the court grant Defendants' motions to dismiss. For the reasons set forth below, the R&R is ADOPTED with modifications noted herein.

I. BACKGROUND

Plaintiff Fausat Amoke Ogunbayo brought these actions based on claims arising from three state court child neglect proceedings against her that resulted in her two sons' temporary

1



placement in foster care. (Ogunbayo I Am. Compl. at 3 (Dkt-I 27).)[1] According to Plaintiff's allegations, the New York City Administration for Child Services ("ACS") brought its first neglect proceeding against her in New York State Family Court in January 2008. (Id. at 3.) That case was closed in March 2008 because Plaintiff cooperated with ACS and underwent psychiatric evaluation which showed no evidence of mental illness. (Id.)

On June 27, 2008, ACS filed a second child neglect petition against Plaintiff (id. at 3-4), and Family Court Judge Terrence McElrath ordered Plaintiff's children removed from her home in Staten Island and placed in foster care in Queens pending the outcome of the proceeding (Ogunbayo II Compl. at 3 (Dkt-II 1)). The distance between Plaintiff's home and the foster care agency made it difficult for Plaintiff to visit her children. (Id. at 8.) Plaintiff claims her sons were healthy, well behaved, and academically successful prior to being placed in foster care. (Id.) While in foster care, however, Plaintiff's sons were allegedly poorly supervised and not well cared for, and their well-being suffered. (Id. 7-8.) During this time Plaintiff's younger son was diagnosed with major depressive disorder. (Ogunbayo I Am. Compl. at 8.)

On April 18, 2011, Judge McElrath issued an order of fact-finding which concluded Plaintiff had neglected her children and the children should remain in foster care. (Id. Ex. A at 1.) On January 10, 2012, the Appellate Division, Second Department, reversed these findings and dismissed the proceedings, holding that the Family Court did not apply the correct legal standard, which required ACS to have established that there was "an imminent danger of harm to the children" in order to prove neglect. (Id. at 3.)

ACS filed a third child neglect petition against Plaintiff on January 20, 2012 (Ogunbayo II Compl. at 5.) Plaintiff failed to appear in that proceeding, which she claims was due to having

---

[1] For ease of reference, the court refers to case No. 12-CV-428 (NGG) as Ogunbayo I and case No. 12-CV-6188 (NGG) as Ogunbayo II. The docket corresponding to Ogunbayo I is abbreviated Dkt-I, and the docket corresponding to Ogunbayo II is abbreviated Dkt-II.

never been provided notice of the fact-finding hearing. (Ogunbayo II Compl. at 6, Ex. B at 2.) While the matter was pending, on February 17, 2012, ACS returned Plaintiff's younger son to her custody. (Ogunbayo I Am. Compl. at 5.) Plaintiff's older son, however, was then in juvenile detention for a criminal offense, and he remained in custody. (Id. Ex. C.) On April 2, 2012, Family Court Judge Karen B. Wolff issued an Order of Fact-Finding, holding that Plaintiff's actions constituted neglect and abandonment under the Family Care Act because she had failed to visit her children between June 8, 2011, and February 15, 2012, and had failed to communicate with the children or ACS. (Ogunbayo II Compl., Ex. B at 2.) The Order concluded that Plaintiff's children were "neglected children." (Id.) Plaintiff denies that she abandoned her children. (Ogunbayo II Compl. at 5-6.)

On June 27, 2012, Judge Wolff issued an Order and Disposition, ordering that Plaintiff's younger son was to be "released to the custody of the Respondent mother" but that Plaintiff was to be "placed under the supervision of ACS," which was to remain in contact with the child, his school, and Plaintiff. (Id. Ex. J at 2.) The following day, the Family Court ordered that upon his release from juvenile detention, Plaintiff's older son was to be placed in foster care until the next permanency hearing because Plaintiff "ha[d] failed to plan for the return of the child." (Id. Ex. H at 2-3.) He remained in foster care until November 15, 2012. (Ogunbayo II Compl. at 5.)

Plaintiff also claims that on at least two occasions during the proceedings, ACS employees harassed her by coming to her home, screaming, banging on her door and windows, and ripping out her window screen. (Ogunbayo I Am. Compl. at 5-6, Ex. B.)

Plaintiff claims that these neglect proceedings and the removal of her children violated 42 U.S.C. § 1983, 42 U.S.C. § 1985(2), section I of the Fourteenth Amendment, Federal Rule of Civil Procedure 26(b)(1), the New York Constitution, and various state laws. (Ogunbayo I Am.

Compl. at 15.) She alleges deficiencies in the neglect proceedings and violations by ACS caseworkers, Family Court Judges, and the City of New York: She claims, inter alia, that (1) ACS lied in its second neglect petition when it asserted that Plaintiff was mentally unstable (id. at 8; Ogunbayo II Compl. at 3); (2) the second neglect proceeding took more than 90 days to come to a resolution in violation of various provisions of the Family Court Act (Ogunbayo I Am Compl. at 10); (3) the finding that Plaintiff had abandoned her children conflicted with the Appellate Division's prior decision overruling the previous Family Court ruling and noting that Plaintiff's children had been placed in foster care in a "location that made it extremely difficult for the family to maintain a relationship" (id. Ex. A at 3; Ogunbayo II Compl. at 5); and (4) the foster care system failed to adequately care for and supervise her sons (id. at 17-19).

## II. PROCEDURAL HISTORY

Proceeding pro se, Plaintiff brought three actions based on these neglect proceedings and the removal of her sons to foster care, of which two remain before the court.[2] On January 31, 2012, while Plaintiff's third neglect proceeding was still pending, Plaintiff filed a complaint against ACS alleging constitutional violations, docketed as No. 12-CV-428 (NGG). (Ogunbayo I Compl. (Dkt-I 1).) After the court dismissed Plaintiff's claims without prejudice (Dec. 19, 2012 Mem. & Order (Dkt-I 26)), Plaintiff filed an Amended Complaint on January 7, 2013, naming the City of New York as the sole Defendant. (Ogunbayo I Am. Compl.) Meanwhile, Plaintiff on December 17, 2012, brought a second action pursuant to 42 U.S.C. § 1983 and other constitutional and state claims against both the City and State of New York, which was docketed as No. 12-CV-6188 (NGG). (Ogunbayo II Compl.)

---

[2] Plaintiff filed a prior case arising out of these facts on August 23, 2011, against Montego Medical Consulting, P.C.; Robert A. Mead, Ph.D.; and Shabnam Shakibaie Smith, M.D., alleging that the defendants violated her civil rights by issuing a report to ACS recommending Plaintiff's sons remain in foster care until Plaintiff was psychologically stabilized. This case was dismissed with prejudice on December 19, 2012. See Ogunbayo v. Montego Med. Consulting, P.C., No. 11-CV-4047, 2012 WL 6625921 (E.D.N.Y. Dec. 19, 2012).

The City and State of New York each filed motions to dismiss the respective complaints against them. (Dkt-I 36; Dkts-II 14-18, 20.) On April 1, 2013, the court referred the motions to Magistrate Judge Cheryl L. Pollack for a report and recommendation. (April 1, 2013, Order (Dkt-I 35; Dkt-II 19).) On June 10, 2013, Judge Pollack issued an R&R granting Defendants' motions to dismiss. (R&R (Dkt-I 39; Dkt-II 23).) Plaintiff then filed written objections to the R&R. (Pl. Obj. (Dkt-I 40).)

## III. STANDARD OF REVIEW

When a magistrate judge issues an R&R and it has been served on the parties, a party has fourteen days to object to the R&R. Fed. R. Civ. P. 72(b)(2). If the district court receives timely objections to the R&R, the court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The district court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, to obtain de novo review of an R&R, an objecting party "must point out the specific portions of the report and recommendation to which [he] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under [ ] Fed. R. Civ. P. 72(b)"). Portions of the

R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

## IV. PLAINTIFF'S OBJECTIONS

Plaintiff's objections comprise twenty-four numbered paragraphs followed by eleven pages of text grouped under thematic headings, and five exhibits. The objections largely repeat the allegations in Plaintiff's complaints and take issue with alleged deficiencies in Plaintiff's Family Court proceedings and with the actions of ACS caseworkers rather than with specific portions of the R&R.

However, because Plaintiff is proceeding pro se, the court reads her objections "liberally and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed."). Under this charitable reading, the court finds that Plaintiff has put forward a number of objections to specific portions of the R&R, which shall be reviewed de novo. The remaining objections are general and therefore require, along with the unobjected to portions of the R&R, clear error review.

### A. Specific Objections

Plaintiff's specific objections fall into two categories: (1) objections to the R&R's application of immunity doctrines found to shield certain Defendants from suit,[3] and (2) objections to various factual characterizations contained in the R&R.

#### 1. Judicial Immunity

Although Plaintiff did not include any Family Court Judges as defendants in either action, Plaintiff's complaints appear to plead allegations against them. (See, e.g., Ogunbayo II Compl.

---

[3] Plaintiff's objections contain multiples statements disputing that Defendants enjoy immunity (either judicial or sovereign) for their acts. (See Pl. Obj. at 2, 4, 8, 13-16.) To prevent repetition, the court has not reproduced all of these statements, which are similar in nature.

at 3-4, 7.) To the extent that Plaintiff made claims against these judges, the R&R found that such claims were "barred by absolute judicial immunity" because "[j]udges have absolute immunity from suit for acts performed in their judicial capacities." (R&R at 13.)

In her objections, Plaintiff argues that Defendants' activities were not judicial in nature:

> It is not in Family Court, County of Richmond, Hon. Judge Terrence McElrath, Hon. Judge Arnold Lim and Hon. Judge Karen B. Wolff's official judicial capacity, to disregard the Constitution of the United States. It is not in Hon. Judge Karen B. Wolff's official judicial capacity to conduct child neglect proceeding against plaintiff, with no due process and/or improper process, at Family Court, County of Richmond case number N-303-12/N-304-12. It is not in Hon. Judge Karen B. Wolff, Family Court, County of Richmond and/or ACS, City of New York, State of New York's official capacity to refuse to return plaintiff's children to plaintiff, without due process and proper process.
>
> . . . .
>
> It was not in the official judicial capacity of the Family Court, County of Richmond, Hon. Judge Karen B. Wolff, case docket nos. N-303-12/N-304-12, to order custody of Joseph O. Ademola Jr, under ACS, City of New York, State of New York, knowing fully, all the previous iniquities and calamities, that occurred to Joseph O. Ademola Jr, under the care and custody of ACS, City of New York, State of New York in case docket NN-03154-08/NN-03155-08.

(Pl. Obj. at 2, 4.) Under a liberal reading of Plaintiff's objections, Plaintiff also argues that the judges were acting outside of their jurisdiction:

> Nothing happened to plaintiff's children in County of Richmond. Family Court, County of Richmond, had no jurisdiction over Family Court, County of Queens, where plaintiff's children were placed and had been residing since June 27, 2008. So if anything happened to plaintiff's children, in County of Queens, where they had been placed since June 27, 2008. Family Court, County of Queens, had jurisdiction.

(Id. at 10.)

Plaintiff is mistaken in her analysis. The scope of a judge's activity considered judicial is quite broad, encompassing any "acts arising out of, or related to, individual cases before [a] judge." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009); see also id. at 214 (holding that

7

Family Court judges' rulings were judicial in nature). The purpose behind this rule is to accord judges protection from suits brought by dissatisfied litigants in order to ensure that judicial decision-making is not influenced by the possibility of retributive litigation. See Kane v. Young Won Han, 550 F. Supp. 120, 122 (E.D.N.Y. 1982). "The factors determining whether an act by a judge is a judicial one relate to the nature of the act itself, i.e. whether it is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his judicial capacity." Id. at 210 (citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)) (internal quotation marks omitted). Whether a judge's acts are judicial does not depend on the specific facts of the case before the judge or whether the judge's ruling was made in error, in bad faith, or with malice. See Stump, 435 U.S. at 356-57; Kane, 550 F. Supp. at 122 ("[Judicial] immunity survives regardless of allegations of corruption or maliciousness."). So long as the act was not "taken in complete absence of all jurisdiction," a judge enjoys absolute immunity from suit based on actions taken in proceedings before her.[4] Mireles v. Waco, 502 U.S. 9, 10 (1991); see also Forrester v. White, 484 U.S. 219, 219 (1988).

New York State Family Court has "exclusive original jurisdiction over proceedings . . . alleging . . . the neglect of a child." Fam. Ct. Act § 1013(a); see also N.Y. Const. Art. 6, § 13(b) ("The family court shall have jurisdiction over the following classes of actions and proceedings which shall be originated in such family court in the manner provided by law: (1) the protection, treatment, correction and commitment of those minors who are in need of the exercise of the authority of the court because of circumstances of neglect . . . ."). The proper county in which a child neglect proceeding should be heard is a question of venue rather than jurisdiction. Such

---

[4] Plaintiff's objections include a summary of the doctrine of qualified immunity (Pl. Obj. at 16), but it does not support her argument. To the extent Plaintiff argues the R&R should have analyzed her claims against the Family Court Judges under this doctrine, the court notes that state judges are protected by *absolute* judicial immunity for adjudicative acts as discussed in this Order. Therefore *qualified* immunity and the exceptions thereto are irrelevant.

proceedings "may be originated in the county in which the child resides or is domiciled at the time of the filing of the petition or in the county in which the person having custody of the child resides or is domiciled." Fam. Ct. Act § 1015(a).

The Family Court judges presiding over Plaintiff's neglect proceedings acted in the context of those cases over which they had proper jurisdiction. Their actions—such as ordering preliminary relief, holding hearings, and issuing decisions concerning the placement of Plaintiff's children—were taken in their official capacity and represented "functions normally performed by a judge." Bliven, 579 F.3d at 210. Even if their rulings were erroneous or were ultimately overturned by the Appellate Division, the judges still retain immunity from suit. See Stump, 435 U.S. at 356. There is no indication in the record that the judges took any action related to Plaintiff outside the context of a judicial proceeding.

Furthermore, jurisdiction was proper. The judges in Plaintiff's cases acted within the "original exclusive jurisdiction" granted to Family Court over child neglect proceedings. Fam. Ct. Act § 1013(a). Plaintiff's contention that the proceedings belonged in Queens County rather than Richmond County is an issue of venue rather than jurisdiction. The court makes no comment as to whether improper venue may revoke judicial immunity but notes only that at the time that each neglect petition was filed, Plaintiff's sons were domiciled at her home in Staten Island, making Richmond County the proper venue.[5]

---

[5] A person's domicile is not necessarily the same as his or her residence. "Domicile is established by residence in fact, coupled with the intent to make the place of residence one's home." Hamilton v. Accu-Tek, 13 F. Supp. 2d 366, 369 (E.D.N.Y. 1998) (citing Texas v. Florida, 306 U.S. 398, 424 (1939)). Although Plaintiff's sons temporarily resided in foster care in Queens and her older son in juvenile detention, there is no indication in the record they intended to make these residences their homes. Much to the contrary. (See Ogunbayo II Compl., Ex. G (Joseph Ademola Ltr.) ("I never stated that I did not want to come home.").) Therefore their domicile remained Plaintiff's home in Staten Island.

Accordingly, Plaintiff's objections regarding juridical immunity are overruled. To the extent that Plaintiff makes claims against the Family Court Judges, those claims are dismissed as barred by judicial immunity.

2. State Sovereign Immunity Under the Eleventh Amendment

Plaintiff also objects to the R&R's finding that the State of New York and Family Court are immune from suit under the Eleventh Amendment. (R&R at 13.) She maintains that "[t]he Eleventh Amendment does not override the United States Constitution and does not override the rights of parents' [sic] to raise their children free from unwarranted, unnecessary, unlawful government interference." (Pl. Obj. at 8.) Plaintiff is mistaken. The Eleventh Amendment enshrines the principle of state sovereign immunity by limiting Article III of the Constitution, which governs jurisdiction of the federal courts. See In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004) ("The Eleventh Amendment effectively places suits by private parties against the states outside the ambit of Article III of the Constitution."). The Eleventh Amendment precludes suits brought by private parties against a state or a state agency except in a few circumstances. Those exceptions include where a state has consented to the suit, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984), or where Congress has explicitly and validly abrogated state sovereign immunity, see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Outside of these exceptions, states are generally shielded by sovereign immunity regardless of the subject matter of the case. Immunity also extends to state agencies, such as Family Court. Humphrey v. New York, 108 F. App'x 691, 691 (2d Cir. 2004) cert. denied 543 U.S. 1063 (2005) ("Eleventh Amendment immunity protects state agencies, including state courts.").

Here, the State of New York has not consented to suit, and Plaintiff has brought an action pursuant to § 1983, a statute under which Congress has not explicitly abrogated the Eleventh Amendment. See Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990). Therefore state sovereign immunity applies, and Plaintiff's claims against New York State and Family Court are barred by the Eleventh Amendment. Accordingly Plaintiff's objection is overruled.

3. Specific Objections to Factual Findings

In her objections, Plaintiff disagrees with a number of facts in the R&R. For example, Plaintiff maintains that a Family Court order dated June 27, 2012, "did not direct plaintiff's younger child, Michael O. Fayemiwo, back to the foster agency, it ordered that the child is released to the custody of plaintiff" and that the order "was wrongly interpreted" in the R&R. (Pl. Obj. at 5.) Plaintiff is correct. The R&R read the June 27, 2012 Order as "directing the plaintiff's younger son [to] be placed in foster care until June 27, 2013." (R&R at 6.) However, the order stated "ORDERED that the child is released to the custody of the Respondent mother." (Ogunbayo II Compl., Ex. J (June 27, 2012, Order) at 2.) The R&R is therefore modified as to this issue. This factual error, however, does not alter the R&R's analysis of whether Plaintiff has stated a claim for relief.

Plaintiff also denies that a particular Family Court order cited in the R&R exists, arguing "[t]here is no Family Court, County of Richmond's fact finding order dated June 28, 2012, as written on the [R&R]." (Pl. Obj. at 9.) Perhaps Plaintiff takes issue with the R&R's description of this order as an "Order of Fact-Finding." (See R&R at 6.) However, it is clear from the R&R's citation and context that it refers to a June 28, 2012, Order issued by Judge Wolff that is attached to Plaintiff's Complaint as Exhibit H. (Ogunbayo II Compl., Ex. H.) Plaintiff's objection is noted, and the R&R is modified as to this issue. However, that this order is entitled

11

"Order of Disposition" rather than "Order of Fact-Finding" has no bearing on the analysis of the R&R or that of this court.

Finally, Plaintiff addresses a factual uncertainty in the R&R by confirming that "there is no new child neglect proceeding against [her] after July 2013." (Pl. Obj. at 8.) The court notes this clarification, and the R&R is modified as to this issue. However, as with the above factual corrections raised by Plaintiff, this fact does not alter the R&R's analysis because the R&R did not rely on it. Rather, the R&R dismissed Plaintiff's claim on the grounds of state sovereign immunity under the Eleventh Amendment, judicial immunity, and failure to allege an unlawful municipal policy or custom as required to maintain an action against the City of New York under 42 U.S.C § 1983. (R&R at 13, 15, 19.)

## B. Plaintiff's Remaining Objections

Plaintiff's remaining objections are general or repeat arguments contained in her complaints and her response to Defendants' motions to dismiss. Plaintiff disputes nearly every phase of the neglect proceedings in Family Court. For example, Plaintiff disputes that she suffers from mental illness—the basis for the neglect proceedings against her—and alleges that ACS fabricated evidence contained in its petitions. (Pl. Obj. at 2.) She complains of the placement of her children in a foster care location remotely located from her home, making it difficult for her to visit. (Id. at 9.) She alleges that the standard of care accorded her children was unacceptably poor. (Id. at 3.) She maintains that crucial information was withheld from her, including notice of a hearing in her Family Court proceeding (id. at 11-12) and the fact of her older son's arrest and placement in juvenile custody (id. at 17-21). Finally, she objects to the Family Court's conclusion that she abandoned her children. (See id. at 5.) These allegations, if true, are troubling. However, they are not specific objections to Judge Pollack's R&R, which

12

acknowledged most of these allegations in its background section. (See R&R at 3-6.) The court has previously analyzed Plaintiff's allegations as claims of procedural and substantive due process violations and found there were none. (See Dec. 16, 2012, Mem. & Order.) The R&R found that Plaintiff failed to sufficiently plead that the harms she alleged were brought about by a policy or custom of the City of New York. (See R&R at 17-19.) Plaintiff has not put forward specific objections to the R&R's conclusion that she did not state a claim for municipal liability. Therefore the court reviews this portion for clear error. Finding none in the R&R's analysis, the court therefore adopts this portion of the R&R.

### C. Remainder of the Report & Recommendations

Portions of the R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2. The court therefore reviews for clear error the portions of Judge Bloom's R&R that were not objected to and finds none. Accordingly, the court also adopts those portions of the R&R.

## V. CONCLUSION

For the reasons set forth above, Judge Pollack's R&R is ADOPTED AS MODIFIED herein. Defendant's motion to dismiss is GRANTED. Plaintiff's complaints are DISMISSED with prejudice for failure to state a claim. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January _6_, 2014

NICHOLAS G. GARAUFIS
United States District Judge

13